FREDERICKA HOMBERG WICKER, Judge.
| ^Defendant, Jonathan Musacchia, appeals his conviction for attempted resisting a police officer with force or violence in violation of La. R.S. 14:27:108.2. Defendant challenges the sufficiency of the evidence presented against him at trial and further assigns as error the trial judge’s denial of his special jury charge request. For the following reasons, we affirm defendant’s conviction and sentence.

PROCEDURAL HISTORY

The Jefferson Parish District Attorney filed a bill of information on February 2, 2012, charging defendant with resisting a police officer with the use of violence or threats of violence in violation of La. R.S. 14:108.2.[1] Defendant proceeded to trial and, on July 25, 2012, a six-person jury found defendant guilty of the responsive verdict of attempted resisting an officer with force or violence. On July |s31, 2012, after defendant waived sentencing delays, the trial judge sentenced defendant to a one-year suspended sentence at hard labor with credit for time served and further imposed upon defendant five years of probation.[2] Defendant timely filed a motion *289 to reconsider sentence, which the trial judge denied. This timely appeal follows.

FACTUAL BACKGROUND

Patrol Officer Joshua Wilkerson of the Kenner Police Department responded to a 9-1-1 call on January 3, 2011, concerning a domestic battery on East Loyola Drive. Upon arrival to the scene, Ms. Lindsay Conaway — the victim and defendant’s ex-girlfriend — flagged down Officer Wilkerson. Based upon his communications with Ms. Conaway, Officer Wilkerson identified defendant as the suspect in relation to the domestic disturbance call. Officer Wilkerson parked his police unit and, dressed in full uniform, approached defendant and asked, “[wjhat’s going on[?]” Officer Wilkerson testified that defendant responded using expletives, speaking with a belligerent, agitated tone and took an “aggressive stance” toward him.
For officer safety, Officer Wilkerson put defendant in an “escort position” and attempted to escort defendant to a nearby vehicle to conduct a pat down for weapons. Officer Wilkerson testified that as he attempted to escort defendant to the nearby vehicle, defendant “shoved” the officer’s hands off of him and told him, “get the hell off me.” When Officer Wilkerson grabbed defendant again to conduct a pat down for weapons, defendant used two hands to shove off of the vehicle and took a swing at him with a closed fist. Officer Wilkerson testified that, |4after defendant attempted to punch him, he tried to secure defendant and place him on the ground, where a physical altercation ensued.
As defendant and Officer Wilkerson struggled on the ground, Officer Mark Stein arrived in a backup capacity at the scene. Upon observing the struggle, Officer Stein radioed in a “108” to headquarters, which indicates that an officer needs assistance; Officer Stein testified that he reported a “108” because he observed Officer Wilkerson “obviously trying to apprehend somebody and was having trouble.” Officer Stein approached the struggle and, pursuant to Officer Wilkerson’s instruction, tased defendant.[3] Thereafter, Officer Wilkerson put defendant in handcuffs and placed him under arrest. As a result of the physical struggle with defendant, Officer Wilkerson sustained lacerations to his elbow and bruising to his ribs, for which he received medical treatment.
Officer Wilkerson obtained a written statement regarding the alleged domestic battery from the victim, Ms. Conaway, who reported that defendant hit her in the face and damaged her cell phone in the driveway.[4] At trial, Ms. Conaway testified that defendant is the father to her twin children but that she and defendant are no longer romantically involved. Ms. Cona-way recalled an altercation with defendant on January 3, 2011, but stated that the details were “a blur” and that she could not recall if defendant hit her on that day. Ms. Conaway testified that upon Officer Wilkerson’s arrival to the scene, she observed him speaking aggressively to defendant and instructing him to “get down.” She further testified that defendant was sitting on the ground “Indian-style” when *290 the officers tased him. Ms. Conaway however also testified that she stood a block away and did not witness any altercation between defendant and Officer Wilkerson. Ms. 1 ¿Conaway testified that defendant is a “great father” to her two children and that she did not want to prosecute defendant for the altercation between her and defendant.
Mr. Donald Musacchia, defendant’s grandfather, testified that he was present on the scene at the time of defendant’s arrest. Mr. Musacchia observed Officer Wilkerson approach defendant, “slam” him against a nearby vehicle, and then grab him by the arms, bringing him to the ground. Mr. Musacchia testified that defendant did not fight with Officer Wilkerson and that defendant “was just sitting there” when officers tased him.
Defendant testified that when Officer Wilkerson approached, he informed the officer of the altercation with Ms. Conaway and complied with Officer Wilkerson’s instruction to turn around.[5] Defendant testified that Officer Wilkerson then grabbed him by the shirt and “slammed” him on a nearby vehicle; he further stated that Officer Wilkerson wrapped both arms around him, lifted him up, and slammed him onto the street. Defendant denied pushing Officer Wilkerson’s hands off of him, attempting to punch him, or struggling with him. Defendant testified that he did not fight Officer Wilkerson and that he tried to comply with the officers’ instructions. Defendant further testified that he was sitting in the grass with his hands behind his back when Officer Wilkerson instructed Officer Stein to “tase him, tase him right now.”[6]
Defendant testified that he also sustained injuries as a result of this incident. Specifically, defendant testified that he re-injured a prior left wrist injury[7] and that he sustained additional abrasions to his fingers, hand, elbow, and forearm.

\ .DISCUSSION

We will first consider defendant’s claim that the evidence at trial was not sufficient to support his conviction. When the issues on appeal pertain to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992).
Defendant claims that all testimony, except Officer Wilkerson’s, proves that Officer Wilkerson used excessive force against defendant and that defendant did not resist the officer with force or violence. Defendant points out that Ms. Conaway’s and Mr. Musacchia’s testimony supports defendant’s position that he was “basically manhandled and tased without showing any resistance.”[8] The state responds that Of- *291 fleer Wilkerson’s testimony — that defendant swung at him with a closed fist as he, in full uniform, tried to conduct a pat down for weapons — supports the jury’s verdict. The state further asserts that all of the evidence, when viewed in the light most favorable to the prosecution, is sufficient to support defendant’s conviction.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. King, 06-554 (La.App. 5 Cir. 1/16/07), 951 So.2d 384, 390, writ denied, 07-0371 (La.5/4/07), 956 So.2d 600. An appellate court’s primary function is not to redetermine the defendant’s guilt or innocence in accordance with its appreciation of the facts and credibility of the witnesses. Rather, our function is to review the evidence in the 17light most favorable to the prosecution and determine whether there is sufficient evidence to support the jury’s conclusion. State v. Banford, 94-883 (La.App. 5 Cir. 3/15/95), 653 So.2d 671.
Evidence may be direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208.
Defendant was charged with resisting a police officer with force or violence in violation of La. R.S. 14:108.2(A), which provides:
A. Resisting a police officer with force or violence is any of the following when the offender has reasonable grounds to believe the victim is a police officer who is arresting, detaining, seizing property, serving process, or is otherwise acting in the performance of his official duty:
(1) Using threatening force or violence by one sought to be arrested or detained before the arresting officer can restrain him and after notice is given that he is under arrest or detention.
(2) Using threatening force or violence toward or any resistance or opposition using force or violence to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.
(3) Injuring or attempting to injure a police officer engaged in the performance of his duties as a police officer.
(4) Using or threatening force or violence toward a police officer performing any official duty.
Although defendant was charged with resisting a police officer with force or violence in violation of La. R.S. 14:108.2, defendant was convicted of the lesser [^responsive verdict of attempted resisting a police officer with force or violence. An attempt occurs “when the offender, having the specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object.” La. R.S. 14:27. Attempt requires both the specific intent to commit a crime and an act tending directly toward accomplishment of that crime. State v. Prine, 44,229, 44,230 (La.App. 2 Cir. 5/20/09), 13 So.3d 758, 764, writ denied, *292 09-1361 (La.2/5/10), 27 So.3d 298.[9] “Attempt” is “a separate but lesser grade of the intended crime [;] ” further, even though the evidence at trial may show that the crime attempted was actually completed by the defendant, he may nevertheless be convicted of an attempt to commit the crime. La. R.S. 14:27(C).
In this case, the state presented evidence that Officer Wilkerson arrived at the scene in a marked police unit and dressed in full uniform to investigate the reported domestic battery. Officer Wilkerson testified that domestic disturbance calls are the most dangerous because, upon a responding officer’s arrival, the environment is already “heated” and “hostile.”
Officer Wilkerson testified that defendant responded to the officer’s arrival with an aggressive stance and belligerent tone. Officer Wilkerson further testified that when he placed defendant in an escort position to conduct a pat down search for officer safety, defendant physically resisted and took a swing at him with a closed fist. Officer Stem’s testimony reflects that defendant and Officer Wilkerson physically struggled on the ground until Officer Stein tased defendant. Defendant | flargues that the defense witness’ testimony proves that defendant did not resist or fight Officer Wilkerson but rather complied with the officer’s instructions.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. Although defendant, his grandfather, and his ex-girlfriend testified that defendant did not attempt to punch nor fight with Officer Wilkerson, the jury obviously found the officers’ testimony more credible. In the absence of internal conflict or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. State v. Caffrey, 08-717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10), 27 So.3d 297.
Accordingly, we find the evidence sufficient to support the charged offense of resisting a police officer with force or violence, in violation of La. R.S. 14:108.2. Because we find the state proved all necessary elements of the greater charged offense of resisting a police officer with force or violence, the evidence was then clearly sufficient to support the jury’s verdict of the lesser responsive offense of attempted resisting a police officer with force or violence. State v. Shraeder, 518 So.2d 1024 (La.1988), cert. denied, 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990). In cases where the evidence at trial supports the greater charged offense but the jury returns a lesser responsive verdict, the Louisiana Supreme Court has recognized that such a result recognizes the legitimacy of a “compromise” verdict. Id.
Accordingly, upon review of the record, we find that reasonable jurors, viewing the evidence in the light most favorable to the prosecution, could conclude [ 10beyond a reasonable doubt that defendant committed the offense of attempted resisting a police officer with force or violence. This assignment lacks merit.
*293 In his next assignment of error, defendant claims that the trial court erred in denying his written request for a special jury charge. Prior to jury deliberations, defense counsel submitted a written special jury charge request: “[i]f you find that the defendant resisted arrest but not by force or violence you must find him not guilty.” The trial judge asked counsel for jurisprudential or statutory authority to support the charge; defense counsel provided no legal citation in support of the requested jury charge. The trial judge denied the request.[10]
Both the state and defendant concede that misdemeanor resisting arrest is not a responsive verdict to the charged crime and defendant does not assign error to the correctness of the responsive verdicts provided in this case. Rather, defendant asserts that the trial court erred in not explaining to the jury that a finding of resisting arrest without the use of force or violence in this case necessarily required the jury to find defendant not guilty. The state responds that the requested jury charge would have required the trial judge to explain the elements of a non-responsive offense (misdemeanor resisting arrest) and would have therefore required explanation, qualification, or limitation and may have confused the jury. Further, the state argues that the trial court adequately instructed the jury on the elements of the charged offense; the state points out that the trial judge instructed the jury that if the state failed to prove any element of the charged offense or lesser responsive verdict beyond a reasonable doubt, the jury should find defendant not guilty.
Under La.C.Cr.P. art. 802, the trial judge is required to instruct the jury “as to the law applicable to the case.” The state and the defendant have a right to ^submit written requests for special jury charges. La.C.Cr.P. art. 807. “A special charge shall be given by the court- if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent.” Id. Further, a “special charge need not be given if it is adequately covered by the general charge.” State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921; La.C.Cr.P. art. 807. Moreover, failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantive rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Henry, 08-658 (La.App. 5 Cir. 10/27/09), 27 So.3d 935, 936, writ denied, 09-2485 (La.4/23/10), 34 So.3d 269.
Defendant relies on State v. Marse, 365 So.2d 1319 (La.1978), to support his position that his request for a special jury instruction should have been granted. Marse was a murder case in which the defense presented that the defendant actually committed the crime of negligent homicide, which is not a responsive verdict to the charge of murder. The Court in Marse found the trial judge erred in failing to instruct the jury on negligent homicide upon request because the trial judge is required to charge the jury as to the law applicable to any theory of defense. The Court however found it was not reversible error because the jury was adequately informed of its duty to acquit the defendant in the event it found defendant guilty of an uncharged crime. Id.
In Marse, defense counsel presented evidence so as to lay out his theory *294 of defense — that the defendant actually committed the uncharged crime of negligent homicide — and supportive argument to the jury. In this case, defense counsel failed either to present evidence or argue to the jury the theory that defendant was guilty, if at all, of the non-responsive misdemeanor of resisting arrest. Therefore, we find Marse is distinguishable; we further find that, based on the lack of | ^argument or evidence presented to the jury in this case as to the theory of defense that defendant actually committed the uncharged crime of misdemeanor resisting arrest, the trial court had no basis to give the requested instruction.
Furthermore, we find no error in the trial judge’s denial of defendant’s request for the special jury charge because the requested charge — “[i]f you find that defendant resisted arrest but not by force or violence you must find him not guilty” — is adequately included or covered in the general charges to the jury. The trial judge instructed the jury, in pertinent part, as follows:
The Defendant is charged with resisting an officer with force or violence ...
[T]o convict the Defendant of resisting an officer with force or violence, you must find that the Defendant used or threatened force or violence toward a police officer, and that the police officer was performing any official duty at the time ...
A responsive verdict to the crime of resisting an officer with force or violence is attempted resisting an officer with force or violence ... in order to convict the Defendant of attempting resisting an officer with force of violence, you must find that the Defendant had a specific intent to commit the crime of resisting an officer with force or violence, and that the Defendant did or omitted an act for the purpose of and tending directly toward the commission of the crime of resisting an officer with force or violence
A further responsive verdict to the crime of resisting an officer with force or violence is not guilty. If the State has failed to prove beyond a reasonable doubt that the Defendant is guilty of either the [] offense charged or of a lesser responsive offense, the form of your verdict should be not guilty ...
[T]o convict the Defendant of the offense charged, you must find beyond a reasonable doubt that the State proved every element of the offense charged ...
11sThe trial judge instructed the jury that if the state failed to prove the elements of the charged offense or the lesser responsive offense, it should return a verdict of not guilty. We find the trial judge sufficiently informed the jury of its duty to acquit defendant if the evidence did not support each element of the charged offense of resisting a police officer with force or violence or the lesser responsive verdict of attempted resisting a police officer with force or violence.
Defendant further contends that the trial judge’s error in denying his special jury charge request was compounded when, during jury deliberations, the jury submitted a note to the trial court inquiring whether a misdemeanor verdict applied and asking for the applicable sentence for each responsive verdict.[11] In response to *295 the jury’s questions, the trial judge informed the jury that he could not respond and instructed the jury to return to deliberations. Defendant now argues that the trial judge erred in failing to respond to the jury’s questions regarding misdemean- or offenses.
The record reflects that defense counsel did not object to the trial judge’s response to the jury’s questions. Failure to contemporaneously object to a trial court error constitutes a waiver of the right to complain on appeal. La.C.Cr.P. art. 841. The contemporaneous objection rule is specifically designed to promote judicial efficiency by preventing a defendant from gambling for a favorable verdict and then, upon conviction, resorting to appeal on errors which either could have been avoided or corrected at the trial court level. State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, 368, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). Therefore, because defendant failed to object or complain of the trial judge’s response to the jury’s note submitted during deliberations, defendant is precluded from raising this argument for the first time on appeal.

I,¿CONCLUSION

For the reasons discussed herein, we find defendant’s assignment of error regarding the special jury charge request lacks merit. We further find the evidence presented at trial sufficient to support defendant’s conviction for attempted resisting a police officer with force or violence in violation of La. R.S. 14:27:108.2. Accordingly, defendant’s conviction and sentence are affirmed.

ERRORS PATENT

We have reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). The record reflects that the trial court failed to adequately advise defendant of the time period for seeking post-conviction relief as required by La.C.Cr.P. art. 930.8. Accordingly, we hereby advise defendant that, pursuant to La.C.Cr.P. art. 930.8, no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. art. 914 or 922. See State v. Ramsey, 10-333 (La.App. 5 Cir. 1/25/11), 60 So.3d 36, 42.

AFFIRMED.

. Defendant was arraigned on March 12, 2012, and pled not guilty.

. The trial judge ordered the first two years to be served on active probation, followed by three years of inactive probation. As special conditions of defendant's probation, the trial court ordered that defendant undergo evaluation and complete all treatment recommended by the Intensive Probation Services Division for substance abuse and mental *289 health issues. He further ordered that defendant undergo random drug screening, complete 100 hours of community service, and obtain a GED or votech training in a trade if defendant did not have proof of a high school diploma.

. Officer Wilkerson testified that, due to the physical struggle with defendant, he was unable to access his own taser, pepper spray, or handcuffs. Officer Stein testified that, after observation of the physical struggle, he intended to tase defendant regardless of Officer Wilkerson’s instruction to do so.

. At trial, Ms. Conaway testified that the cell phone “dropped” in the driveway.

. When questioned regarding the altercation with Ms. Conaway, defendant admitted to breaking Ms. Conaway’s cell phone but denied hitting her that day. On cross-examination, defendant testified that he "smashed” Ms. Conaway’s cell phone because he no longer wanted to pay for Ms. Conaway’s cell phone use. He denied that he smashed the cell phone to prevent Ms. Conaway from calling the police after he hit her.

. Defendant testified that Officer Stein appeared hesitant to tase him upon Officer Wilkerson’s instructions. When questioned if he was hesitant to tase defendant, Officer Stein testified that he was not hesitant to tase defendant but that he had "trouble getting it out, my taser.”

. Ms. Conaway further confirmed the existence of defendant’s prior left wrist injury. Ms. Conaway testified that the prior injury limited defendant's use of his left arm and hand.

. Defendant further asserts that his prior left wrist injury proves that he was unable to resist Officer Wilkerson after he placed defendant into an “escort position” with his left arm behind his back.

. "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). Specific intent is a state of mind and, therefore, need not be proven as fact, but may be inferred from the circumstances and actions of the accused. State Petty, 99-1307 (La.App. 5 Cir. 4/12/00), 759 So.2d 946, 949, writ denied, 00-1718 (La.3/16/01), 787 So.2d 301.

. In denying the request, the trial judge stated, "[y]ou ask for a charge, you give me a cite. We don’t make it up as we go along.”

. The responsive verdicts provided to the jury in this case were: (1) Guilty of Resisting *295 a Police Officer with Force or Violence; (2) Guilty of Attempted Resisting a Police Officer with Force or Violence; (3) Not Guilty.